### E. L. Wilson v. The State.

No. 5356.   Decided April 2, 1919.

**1.—Theft—Sufficiency of the Evidence.**

Where, upon trial of theft of property of the value of $50 and over, the evidence was sufficient to sustain the conviction there was no error on that ground.

**2.—Same—Suspended Sentence—Charge of Court—Practice in District Court.**

While the statute requires that application for suspended sentence must be filed when the trial begins, yet where the defendant reasonably brings himself within the terms of the law and presents his application, although his acts and words may have led the court to believe that he had announced ready for trial, but it became apparent that he not only desired to avail himself of his right to make application for suspended sentence but was engaged in its preparation at the time, the court should have submitted his plea in a proper charge, and a refusal to do so was reversible error.

Appeal from the District Court of El Paso.   Tried below before the Hon. W. D. Howe, judge.

Appeal from a conviction of the theft over the value of $50; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*P. E. Gardner* and *Jackson & Isaacks,* for appellant.—On question of suspended sentence: Pizano v. State, 20 Texas Crim. App., 139.

*E. A. Berry,* Assistant Attorney General, for the State.—On question of suspended sentence: Williamson v. State, 72 Texas Crim. Rep., 618, 435; Muldrew v. State, 73 Texas Crim. Rep., 463, 166 S. W. Rep., 156. Contra.

LATTIMORE, Judge.—Appellant was convicted of felony theft of a certain keg or barrel of Scotch whisky and his punishment fixed at two years in the penitentiary.

It appears from the record that some gentleman, whose identity is undisclosed, for a consideration, turned over to one Daniel, some household goods which were to be packed by the latter and shipped to Matagorda, Texas, but the railroad company, moved by fear of the law, declined to receive for shipment one item of the aforesaid household property, to-wit, a ten-gallon keg of Scotch whisky, which, for several reasons, said Daniel placed for safe keeping in a corral which he had around his warehouse.   Just how long the keg remained there or how frequently it was seen while in that custody is also undisclosed.   It appears that there was a colored individual by the name of Steele who had accepted some character of employment from Mr. Daniel, and that on the night of November 10th, or rather in the early hours of the morning

of November 11, 1918, this appellant and said Steele, who was also charged with stealing this same keg. appeared at the home of one Phillips about three or four o'clock A. M., while it was yet night, and said parties were accompanied by this same keg of Scotch whisky. In arousing Phillips, appellant, who seems to be so black that he has been nicknamed Blue, informed Phillips, who wished to know who was disturbing him, that it was Blue, and that he had some booze, and when permitted to enter, Blue came in with a box containing a barrel, which later Phillips called a keg, which, when introduced in court in the presence of the jury was identified by Phillips, and also substantially by Daniel, as being the same keg, or one identical, with that in which the Scotch whisky was in Daniel's corral. Later in the day appellant came back and brought with him two jugs and a dozen bottles all of which he proceeded to fill from the contents of the keg which Phillips said he knew by personal contact and experience was whisky, and Scotch whisky at that.

After the departure of appellant carrying with him the dozen bottles and two jugs, all being full, Phillips seems to have been moved by some impulse and says that he poured out the remaining contents of the keg. The testimony of Phillips was corroborated by his wife and one Clifford. Daniel had testified that the last time he saw the aforesaid keg of Scotch whisky in his corral was on the 10th of November.

We think there is nothing in appellant's contention that the verdict is not supported by the evidence. Steele worked for Daniel; Daniel had the keg of Scotch whisky in his corral on November 10th; the night of that day said keg disappeared; that same night at an unearthly hour, Steele and Appellant appeared with a keg; same kind of keg, same content, whisky; same kind of whisky, Scotch. The conclusion is irresistible.

We think the case must be reversed because the trial court refused to allow appellant to file his application for a suspended sentence and refused to submit that question to the jury. The record discloses that the attorney for appellant had two cases before the District Court set for the same day, and that he said to the court that he would be ready in either, and thereupon the prosecuting attorney announced ready in the other case, same being against one Thompson, which case was tried. When it was concluded, the court called appellant's case and the attorney for the State announced ready for trial, but appellant's counsel announced he was not ready because he had a case in the Federal court for the following morning and desired the remainder of the day to get ready for trial in that case. The court then informed counsel that he could try appellant's case and finish it that afternoon and have the day following to look after his case in the Federal court. Thereupon, as appears from the court's explana-

tion to the bill of exceptions, appellant's counsel said. "Let me see if the defendant is here," and presently stated that he was so present. Thereupon the court, without so stating to counsel, as far as the record discloses, entered on his docket an announcement of ready for both parties and directed the clerk to prepare and deliver a list of the jurors to the attorneys. When the list was handed to the district attorney he began an examination of the panel, but counsel for the appellant had begun to prepare an application for a suspended sentence for the signature of appellant thereto. Some colloquy occurred between the court and counsel for the appellant at this stage, the latter claiming that he had not announced ready for trial and the court insisting that the words and action of counsel constituted an announcement, and thereupon the court refused to permit the application for a suspended sentence to be filed, which counsel, nevertheless, prepared. The court also refused to charge the jury relative to the suspended sentence or to give a special charge thereon requested by appellant. In this the court erred. The right of suspended sentence is a substantial one and should not be taken from a defendant in any case where he reasonably brings himself within the terms of the law and presents his application. There had been no announcement of ready, by appellant nor had there been any statement by the court to appellant's counsel of the fact that the court was entering or had entered on his docket the fact of his making such announcement for appellant. The court's conclusion that the words and action of appellant's counsel amounted to an announcement of ready should not have been indulged when it at once became apparent that appllant not only desired to avail himself of his right to make such application, but was immediately engaged in its preparation. We are not in disagreement with the proposition that for the purpose of determining when an application should be filed, the expression "when the trial begins," as used in this statute, means the announcement of ready for trial by both parties; but we are holding that when it appears reasonably certain that it is not understood by appellant that he has announced, or that the court is making the announcement for him, then no technical strictness should be invoked to prevent a bona fide attempt to present such application. The application should have been permitted, and the question submitted to the jury.

For the error in this matter the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*